IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| INTERMOUNTAIN RESOURCES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>J. NEAL JORGENSEN; DIANE JORGENSEN; and RECREATIONAL LANDS UNLIMITED, INC.,<br><br>Defendants / Third-Party Plaintiffs,<br><br>vs.<br><br>PINE CREEK RANCH PROPERTY OWNERS ASSOCIATION,<br><br>Third-Party Defendant. | MEMORANDUM DECISION AND ORDER ON SCOPE OF PRESCRIPTIVE EASEMENT<br><br><br><br>Case No. 2:08-CV-80 TS |

I. PROCEDURAL HISTORY

On January 19, 2011, the jury returned a verdict in favor of Third-Party Plaintiff Recreational Lands Unlimited, Inc. ("RLU") on its claim for prescriptive easement over the portion of the Bob Draper Road which runs over Third-Party Defendant Pine Creek Ranch Property Owners Association's ("Pine Creek") property.[1] Prior to trial, the Court held that Utah

---

[1] *See* Docket No. 234.

1

law required the determination of whether the elements of a prescriptive easement have been met be submitted to the jury. If the jury found that the elements of a prescriptive easement have been met, "it will be for the Court to decide whether RLU's contemplated use of the prescriptive easement is within the scope of that easement."[2] Following the announcement of the jury's verdict in favor of RLU on its prescriptive easement claim, the Court ordered briefing on the scope of RLU's prescriptive easement. The issue is now fully briefed and ripe for decision. Having considered the parties' respective arguments, the Court enters the following Order.

## II. FACTUAL BACKGROUND

Sometime in 1951, Bob Draper received permission from Pine Creek's predecessor-in-interest to construct a road ("the Bob Draper Road") across its property to access and harvest timber on property owned by RLU's predecessor-in-interest. Over the next few decades, Bob Draper and his son Barry would sporadically use the road to cross Pine Creek's property to harvest timber from RLU's property.

The type of equipment employed by the Drapers changed over time. In the 1950s, Bob Draper used horses to harvest timber. When the Drapers returned in the 1970s and resumed logging activities for a couple years, they used a smaller "Oshkosh" truck. A picture of this truck was introduced at trial as Defendant's Exhibit L. The Drapers returned for a few years in the 1980s and 1990s to harvest timber from the RLU property. During this time-frame, the Drapers used an 80,000 pound, eighteen wheel logging truck to convey timber via the Bob Draper Road.

Barry Draper testified that at no time did the Drapers ever remove more than 150,000 board feet in a single logging season from RLU's property via the Bob Draper Road. Cal Nelson

---

[2]Docket No. 203, at 2.

and Bernd Wachtel, individuals who have owned property in the Pine Creek area for over forty years, both testified that in those forty years, they could only recall three occasions where they saw timber being hauled over the Bob Draper Road and could not recall ever seeing full-size logging trucks on the Bob Draper Road.

RLU proposes that its prescriptive easement grants it an unrestricted right to cross Pine Creek's property via the Bob Draper Road for logging purposes. Pursuant to this alleged unrestricted right, RLU argues that it should be allowed to carry through with its plan to use the Bob Draper Road to remove six million board feet of timber from its property in approximately a two-year period. To accomplish this task, RLU proposes to make roughly ten trips up and down the Bob Draper Road each day, Monday through Friday,[3] using 80,000 pound, eighteen-wheel logging trucks, traveling no more than ten miles per hour.

## III. DISCUSSION

"The general rule is that the extent of a prescriptive easement is measured and limited by its historic use during the prescriptive period. 'The right cannot be enlarged to place a greater burden or servitude on the property.'"[4]

RLU cites to several cases which it argues clarify this general rule and allow for changes in the use of a prescriptive easement such as the one proposed by RLU. RLU first argues that, in determining historical use, the law distinguishes between difference in the "degree" of use and the "kind" of use. Citing to a California Court of Appeals case, RLU argues for the proposition

---

[3]Mr. Stull testified at trial that they planned to only work until noon on Fridays, which would likely reduce the trips up and down the Bob Draper Road on those days.

[4]*Valcarce v. Fitzgerald*, 961 P.2d 305, 312 (Utah 1998) (quoting *Nielson v. Sandberg*, 141 P.2d 696, 701 (Utah 1943)).

3

that increases in "degree" of use are within the historical use of a prescriptive easement, while shifts in the "kind" of use are not.[5] RLU uses this principle to argue that its proposed use would only increase the degree by which it used the Bob Draper Road, not the kind of uses it had engaged in historically.

As a threshold matter, the Court notes that this decision, and the other decisions cited by RLU from other jurisdictions, are not controlling on this Court and will only be considered for their persuasive value. As to the merits of RLU's proposition, the Court finds that the precise language of the *Gaither* decision fails to wholly endorse RLU's proposed dichotomy between "degree" and "kind," but rather adopts a rule quite similar to the general rule in Utah quoted above. Turning to the specific language of the *Gaither* court, it held that "[i]f the change is not in the kind of use, but merely one of degree *imposing no greater burden* on the servient estate, the right to use the easement is not affected."[6] Thus, for a proposed change to be considered "merely one of degree," the proposed use can impose no greater burden on the servient estate—which is precisely the law in Utah.

The application of this principle to the circumstances in *Gaither* is no more instructive. There, the *Gaither* court found that the prescriptive easement holder's proposed use of adding a trailer park to its property, thereby inviting house trailers and related increased traffic from the operation of a trailer park, was inconsistent with the holder's historical use of a shared driveway for access to the holder's home and farmland. The court found that "[s]uch a use would be a

---

[5]*See Gaither v. Gaither*, 332 P.2d 436 (Cal. Ct. App. 1958).

[6]*Id.* at 438 (emphasis added).

4

substantial change in the nature of the use and a consequent increase of burden upon the servient estate. It would be something more than a change in the degree of use."[7]

RLU next argues that normal historical changes in the manner of use and degree of use do not constitute an unreasonable deviation from the original grant of the easement.[8] The case cited in support of this argument, however, arose out of a situation where an express easement had been previously granted. Thus, the *Logan* court was tasked with determining whether the proposed use was contemplated by the original parties when the easement was granted.[9] Such a concept is inapplicable to a prescriptive easement, where no easement was ever granted to RLU.

RLU further points to the Utah Supreme Court's decision in *Valcarce v. Fitzgerald*,[10] for the proposition that normal changes over time as a result of changes in technology remain consistent with the historical use of a prescriptive easement. While some statements in *Valcarce* could be read to support the proposition argued by RLU, the *Valcarce* court was careful to note that its decision to find that the installation of PVC piping for the conveyance of water was consistent with a prescriptive easement to convey water by an unimproved canal was informed by "the arid nature of our state" and the "need to prevent waste and accommodate a more efficient use of limited available water."[11] Thus, the principle was limited to conveyances of water and is inapplicable to the present action.

---

[7] *Id.*

[8] Docket No. 237, at 3-4 (citing *Logan v. Brodrick*, 631 P.2d 429 (Wash. Ct. App. 1981)).

[9] *Logan*, 631 P.2d at 432.

[10] 961 P.2d at 305.

[11] *Id.* at 312.

5

The Court, therefore, finds none of RLU's contentions persuasive. Utah law is clear that a "prescriptive right [is] limited by the nature and extent of the use during the prescriptive period."[12] In making this determination, "[t]he use during the prescriptive period is the only indication of the nature and extent of the right acquired. The servient estate can only be subjected to the easement to the extent to which the easement was acquired, and the easement owner cannot change this use so as to put any greater burden upon the servient estate."[13]

Looking to RLU's use during the prescriptive period, the Drapers' logging activities fall well short of the full-scale commercial logging operation proposed by RLU. During the prescriptive period, the Drapers, at most, conveyed 150,000 board feet in a single logging season across Pine Creek's property via the Bob Draper Road. Over the decades the Drapers used the Bob Draper Road for logging purposes, their use was, at best, sporadic and largely imperceptible to the individual Pine Creek property owners. RLU's proposed use, by contrast, would involve numerous trips by commercial loggers, for at least five days a week for a substantial portion of the day. Moreover, RLU intends to remove roughly six million board feet over a two year time period—twenty times the amount of timber ever removed and conveyed by the Drapers annually. The Court finds that RLU's proposed use is a substantial departure from the nature and extent of its prescriptive right and would put a substantially greater burden upon the servient estate.

Consistent with Utah law, the Court finds that RLU's prescriptive right across Pine Creek's property for logging activities is limited to the use of the Drapers and related parties during the prescriptive period. Thus, RLU is limited to conveying no more than 150,000 board

---

[12]*Nielson*, 141 P.2d at 701.

[13]*Id.*

feet per year via the Bob Draper Road across Pine Creek's property and to using equipment no larger than that employed by the Drapers and related parties during the prescriptive period. In addition to this right, the Court also holds that the evidence at trial clearly established that RLU's prescriptive easement includes RLU's historical usage of the Bob Draper Road for hunting, recreation, sheepherding, property access, showing lots to prospective buyers, checking and maintaining utilities, and construction of cabins.

RLU contends that such a holding limits RLU to logging activities that are antiquated and have now been superceded by intervening changes in technology. RLU argues that as technology improved, the Drapers used increasingly sophisticated logging equipment and that this progression should be recognized by this Court. Relatedly, RLU argues that it was never restricted previously in its logging activities and its right of access should therefore remain unrestricted. The Court finds such arguments, however, at odds with the basic tenants of a prescriptive easement claim. As is well settled in Utah law, a prescriptive easement is limited to the historical use—not the anticipated or most reasonable use. Thus, regardless of whether the party asserting a prescriptive easement was ever limited by the servient estate, any right obtained through prescriptive easement is always inherently limited by the party's historical use of the servient estate. "The doctrine of prescriptive easement was designed to give legal sanction to property arrangements that have existed peacefully, openly, continuously and without objection for the prescriptive period."[14] It was not, however, designed to validate a proposed use which dramatically increases the burden on the servient estate.

---

[14] *Homer v. Smith*, 866 P.2d 622, 628 (Utah 1993).

It is so ORDERED.

DATED   April 5, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge